UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| JOSEPH SAPIENZA, and SARAH JONES SAPIENZA, M.D.,<br><br>Plaintiffs,<br><br>vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>Defendant. | 3:18-CV-03015-RAL<br><br><br>OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND CERTIFYING QUESTION TO SUPREME COURT OF SOUTH DAKOTA |

Plaintiffs, Joseph Sapienza and Dr. Sarah Jones Sapienza, built a house and then had to tear it down to comply with an injunction issued against them in a state court action. The Sapienzas' insurer, Liberty Mutual Fire Insurance Company (Liberty Mutual), defended them in the state court action but refused to indemnify them for the costs of complying with the injunction. The Sapienzas sued Liberty Mutual in this Court, alleging breach of contract and bad faith. Doc. 1. Liberty Mutual moved to dismiss, arguing that the Sapienzas failed to state a claim upon which relief can be granted. Doc. 9. For the reasons stated below, this Court grants in part and denies in part Liberty Mutual's motion to dismiss and certifies a question to the Supreme Court of South Dakota.

I.  Facts

In 2013, the Sapienzas purchased a home in the McKennan Park Historic District in Sioux Falls, South Dakota. Doc. 1 at ¶¶ 6–7. They decided to raze the existing house and build a new home on the property. Doc. 1 at ¶ 7. They hired an architect to design the home and submitted a proposal to the Sioux Falls Board of Historic Preservation (the Board). Doc. 1 at ¶¶ 8–9. The Board approved the proposal and the Sapienzas hired a contractor to build their home. Doc. 1 at ¶¶ 9–10.

1

During construction, the Sapienzas' neighbors, Pierce and Barbara McDowell, became concerned about the size and location of the new home. McDowell v. Sapienza, 906 N.W.2d 399, 403 (S.D. 2018); Doc. 1 at ¶ 11. In early May 2015, the McDowells' lawyer sent the Sapienzas a cease-and-desist letter maintaining that the home violated height and setback regulations. McDowell, 906 N.W.2d at 403. The Sapienzas did not stop construction, so the McDowells sued them in state court in mid-May 2015. Id.; Doc. 1 at ¶ 11.

The McDowells' complaint alleged that the height and proximity of the Sapienzas' home prevented the McDowells from using their fireplace, blocked the natural light the McDowells previously enjoyed, and decreased the value of their home. Doc. 1 at ¶ 11; Doc. 1-1 at 4–5. Count 1 of the complaint sought a permanent injunction requiring the Sapienzas to modify or relocate their house. Doc. 1-1 at 5–6. Count 2, entitled "Negligence," sought this same injunctive relief and, in the alternative, damages. Doc. 1-1 at 6–7. Count 3 alleged that the Sapienzas' home was a nuisance and requested an injunction and damages. Doc. 1-1 at 7–8.

The Sapienzas retained a South Dakota attorney (defense counsel) to defend them against the McDowell suit. Doc. 14 at 2; Doc. 11-1. Defense counsel filed an answer for the Sapienzas on June 12, 2015. Doc. 11-1. The Sapienzas notified their insurer Liberty Mutual of the McDowell suit on August 24, 2015. Doc. 1 at ¶ 18; Doc. 14 at 2; Doc. 1-5 at 3. Liberty Mutual insured the Sapienzas under a Homeowner's Policy and an Excess Policy. Doc. 1 at ¶¶ 12–17; Docs. 1-2, 1-3.

Several sections of these Policies are relevant to the Sapienzas' claims and Liberty Mutual's motion to dismiss. In brief, the Homeowner's Policy required Liberty Mutual to defend and indemnify the Sapienzas against a suit for damages because of "property damage." Section II of the Homeowner's Policy describes the coverage provided:

> **COVERAGE E – Personal Liability**
> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

Doc. 1-2 at 18. The Homeowner's Policy defines "property damage" as "physical injury to, destruction of, or loss of use of tangible property." Doc. 1-2 at 8. The Homeowner's Policy in its exclusions states that "**Coverage E – Personal Liability,** does not apply to: . . . b. 'Property damage' to property owned by the 'insured.'" Doc. 1-2 at 20.

The Excess Liability Policy provides additional coverage to the Sapienzas:

**COVERAGE – PERSONAL EXCESS LIABILITY**

We will pay all sums in excess of the **retained limit** and up to our limit of liability for damages because of **personal injury** or **property damage** to which this policy applies and for which the **insured** is legally liable.

Doc. 1-3 at 7. The Excess Liability Policy defines "property damage" as "(a) injury to or destruction of tangible property; (b) injury to intangible property sustained by an organization as the result of false eviction, malicious prosecution, libel, slander or defamation." Doc. 1-3 at 7. The Excess Liability Policy "does not apply to: **property damage** to: (1) property owned by any **insured**." Doc. 1-3 at 8.

Liberty Mutual agreed to defend the Sapienzas from the McDowell suit under a reservation of rights, and defense counsel previously retained by the Sapienzas continued defending the Sapienzas with Liberty Mutual then paying the attorney's fees. Doc. 1 at ¶ 18; Doc. 1-5. Nevertheless, the Sapienzas allege that Liberty Mutual "controlled the defense by, among other things, implementing a Comprehensive Litigation Program, issuing instructions to defense counsel concerning actions to be taken (or not taken), failing to retain an independent expert architect or contractor to offer opinions regarding the home, and refusing to pay for certain activities." Doc. 1 at ¶ 18; Doc. 1-4 at 2.

The McDowell suit went to trial in June 2016. Doc. 1-4 at 2. The state trial judge issued a decision and order in December 2016 granting the McDowells a mandatory injunction against the Sapienzas. The injunction required the Sapienzas to bring their house into compliance with federal and state regulations for

3

buildings in historic districts or rebuild it. Doc. 1-4 at 2–3, 25, 29. The state trial judge did not order the Sapienzas to pay any monetary damages to the McDowells. Doc. 1-4.

Liberty Mutual sent the Sapienzas a letter in early March 2017 stating that it would "continue to provide a defense to you for the Lawsuit, including any appeal," but that it would not provide any coverage for the "injunctive relief" ordered by the state trial judge. Doc. 1-5 at 2. According to Liberty Mutual, the injunctive relief and the costs of complying with it did not constitute "damages" under the Policies. Doc. 1-5 at 4.

The Supreme Court of South Dakota affirmed the state trial court's order of injunctive relief in early 2018. McDowell, 906 N.W.2d 399. The Court affirmed that regulations concerning construction in historic districts applied to the Sapienzas' house and that the house violated these regulations because it was more than eight feet taller than the permitted height. Id. at 405–06. As to the injunction, the Court held that "[p]ecuniary compensation would not provide adequate relief" for the harm the Sapienzas' home caused to the McDowells and the McKennan Park District. Id. at 407. The Court remanded the case "for further proceedings consistent with" its opinion. Id. at 411.

The Sapienzas allege that after the remand, the state judge ordered them to submit a new application to the Board. Doc. 1 at ¶ 26. The new application included structural changes to the Sapienzas' home to bring it into compliance with the regulations for historical districts. Doc. 1 at ¶ 26. Defense counsel, who had continued to represent the Sapienzas during their appeal to the Supreme Court of South Dakota, did not attend the hearing before the Board. Doc. 1 at ¶ 27. According to the Sapienzas, the Board refused to approve the new application and, based on arguments by the McDowells' lawyer, prohibited the Sapienzas from submitting any future plans for approval. Doc. 1 at ¶ 28.

In May 2018 the state judge issued a writ of execution giving the Sapienzas thirty days to demolish their home. Doc. 1 at ¶ 29. The Sapienzas complied with the writ and incurred in excess of $60,000 in demolition-related expenses. Doc. 1 at ¶ 30.

The Sapienzas sued Liberty Mutual in this Court in September 2018. Count 1 of their complaint is for breach of contract, alleging that Liberty Mutual breached its duty to defend and indemnify them. Doc.

4

1 at ¶¶ 31–35. Counts 2, 3, and 4 of the Sapienzas' complaint essentially allege that Liberty Mutual's handling of the McDowell suit and refusal to indemnify the Sapienzas constitute bad faith. Doc. 1 at ¶¶ 36–48. Liberty Mutual moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 9.

**II.  Standard of Review**

On a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's factual allegations as true and make all inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id., "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertions devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (cleaned up) (quotation omitted).

When determining whether to grant a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (internal marks omitted) (quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)). Here, the Sapienzas attached to their complaint the McDowell's complaint in state court, both Policies, the state judge's December 2016 decision and order, the March 2017 letter from Liberty Mutual, and the Supreme Court of South Dakota's decision in McDowell v. Sapienza. Among other things, Liberty

5

Mutual submitted the answer defense counsel filed in the McDowell suit. This Court has considered these documents in ruling on Liberty Mutual's 12(b)(6) motion. These items were either matters of public record, attached to the complaint, or integral to the Sapienzas' claims.

**III.    Analysis**

    **A. Count 1: Breach of Duty to Defend**

The Sapienzas as part of Count 1 of their complaint allege that Liberty Mutual had a contractual duty to defend them against the McDowell suit and that Liberty Mutual breached this duty by failing to provide them with a proper defense. Doc. 1 at ¶¶ 18, 26–28, 32; see also Doc. 14 at 7. Neither party cited— and this Court has not found—any South Dakota case addressing an insurer's liability for an inadequate defense. This Court must therefore "attempt to predict" how the Supreme Court of South Dakota would treat such a claim. Jurrens v. Hartford Life Ins. Co., 190 F.3d 919, 922 (8th Cir. 1999) (citation omitted). In doing so, this Court "may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data." Id. (cleaned up and citation omitted). Although there is no South Dakota precedent on an insurer's liability for providing an inadequate defense, there is a draft of the Restatement addressing this issue. Because the draft Restatement follows the well-reasoned majority rule and because the Supreme Court of South Dakota has found the Restatements "persuasive in many instances," this Court predicts that the Supreme Court of South Dakota would adopt the Restatement's position on insurer liability for an improper defense. Chem-Age Indus., Inc. v. Glover, 652 N.W.2d 756, 770 (S.D. 2002); see also Hendrix v. Schulte, 736 N.W.2d 845, 848–49 (S.D. 2007) (applying the Restatement); Wildeboer v. S.D. Junior Chamber of Commerce, Inc., 561 N.W.2d 666, 674 n.10 (S.D. 1997) (Sabers, J., dissenting) ("This court frequently consults and employs the Restatements."); Beau Townsend Ford Lincoln, Inc. v. Don Hinds Ford, Inc., 759 F. App'x 348, 353 (6th Cir. 2018) ("[W]e may look to an applicable Restatement . . . for guidance when there is no controlling state law on point [and] the state has indicated that it considers the Restatements to be persuasive authority." (cleaned up and citation omitted)).

The most recent draft of the Restatement provides two scenarios under which the insurer may be liable for providing an inadequate defense:

6

> (1) If an insurer undertakes to select counsel to defend a legal action against the insured and fails to take reasonable care in so doing, the insurer is subject to liability for the harm caused by any subsequent negligent act or omission of the selected counsel that is within the scope of the risk that made the selection of counsel unreasonable.
> (2) An insurer is subject to liability for the harm caused by the negligent act or omission of counsel provided by the insurer to defend a legal action when the insurer directs the conduct of the counsel with respect to the negligent act or omission in a manner that overrides the duty of the counsel to exercise independent professional judgment.

Restatement of the Law of Liability Insurance § 12 (Am. Law Inst., Revised Proposed Final Draft No. 2, Sept. 7, 2018).[1] To be liable under § 12, then, the insurer itself must have engaged in some misconduct. Indeed, § 12 rejected the rule applied by a minority of states that insurers are vicariously liable for all malpractice by defense counsel they hire. Id. cmts. d, e & reporters' notes d, e; see also George M. Cohen, Liability of Insurers for Defense Counsel Malpractice, 68 Rutgers Univ. L. Rev. 119, 125 n.37 (2015) (stating that a majority of jurisdictions do not hold insurers vicariously liable for the actions of defense attorneys they hire). This minority rule is unnecessary, the Restatement reasoned, because defense counsel is in the best position to prevent harm from his or her own malpractice and because an attorney with adequate liability insurance is just as able as the insurer to spread the risk of loss. Restatement of the Law of Liability Insurance § 12 cmts. d, e. Beyond that, the Restatement explained, a lawyer hired by an insurance company to represent an insured is not an agent of the company such that the company should be held vicariously liable for the lawyer's misconduct. Id. cmt. d & reporters' note d. Instead, the lawyer is an independent contractor who owes the insured a duty to exercise his or her own judgment when representing the insured. Id.; see also St. Paul Fire & Marine Ins. v. Engelmann, 639 N.W.2d 192, 200 n.7 (S.D. 2002) (explaining that "attorneys representing insureds on behalf of carriers owe an undeviating fealty to the insureds").

The Sapienzas hired defense counsel themselves so the issue here is whether Liberty Mutual breached the duty to defend by overriding counsel's independent judgment. According to the Sapienzas'

---

[1] The Restatement of the Law of Liability Insurance remains in proposed final draft form, but reflects many years of work by the American Law Institute and has been cited and relied upon in various court decisions. See, e.g., Country Mut. Ins. Co. v. Martinez, No. CV-17-02974-PHX-ROS, 2019 WL 1787313, at *13 n.15 (D. Ariz. Apr. 24, 2019); Nat'l Cas. Co. v. W. Express, 356 F. Supp. 3d 1288, 1299 (W.D. Okla. 2018); Selective Ins. Co. of Am. v. Smiley Body Shop, Inc., 260 F. Supp. 3d 1023, 1033 (S.D. Ind. 2017).

7

complaint, Liberty Mutual breached the duty to defend when it "took control of the defense of the Lawsuit and responsibility for payment of counsel," issued "instructions to defense counsel concerning actions to be taken (or not taken)," failed "to retain an independent expert architect or contractor to offer opinions regarding the home," and refused to "pay for certain activities, all to the ultimate detriment of the Sapienzas." Doc. 1 at ¶ 18. The Sapienzas also allege that Liberty Mutual breached the duty when defense counsel "did not attend" the Board's hearing on the Sapienzas' new application. Doc. 1 at ¶ 27. Liberty Mutual argues that these allegations fail to state a claim because, among other things, the Sapienzas do not allege that Liberty Mutual overrode defense counsel's independent professional judgment and have not adequately alleged that Liberty Mutual's actions caused them damages.

This Court agrees with Liberty Mutual that the Sapienzas' allegations fall short in several respects. To begin with, the Sapienzas' allegations that Liberty Mutual issued "instructions to defense counsel" and refused "to pay for certain activities" are too vague to support the reasonable inference that Liberty Mutual breached the duty to defend. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) ("[S]ome factual allegations may be so indeterminate that they require further factual enhancement in order to state a claim." (cleaned up and citation omitted)). The Sapienzas do not allege what Liberty Mutual instructed defense counsel to do or for what activities Liberty Mutual refused to pay. Nor have the Sapienzas made any allegations suggesting that Liberty Mutual's instructions and refusal to pay overrode defense counsel's independent professional judgment or caused the Sapienzas harm. In short, the Sapienzas' allegations about instructions to defense counsel and the refusal to pay for certain services constitute "naked assertions devoid of further factual enhancement," and are therefore insufficient to state a claim. Iqbal, 556 U.S. at 678 (cleaned up) (quoting Twombly, 550 U.S. at 557).

The Sapienzas' claim about lack of a retained expert suffers from similar problems. Again, the Sapienzas allege that Liberty Mutual "controlled the defense by . . . failing to retain an independent expert architect or contractor to offer opinions regarding the home." Doc. 1 at ¶ 18. This allegation does not plead sufficient facts to draw a reasonable inference that Liberty Mutual breached the duty to defend. See Iqbal, 556 U.S. at 678. Indeed, the Sapienzas do not allege that defense counsel wanted to hire an expert or that

Liberty Mutual overrode defense counsel's professional judgment that an expert was necessary. See Restatement of the Law of Liability Insurance § 12 cmt. e, illus. 5 (explaining that an insurer would not be liable for the failure to hire an expert when defense counsel independently chose not to hire the expert without consulting the insurer). Moreover, nothing in the complaint indicates that the failure to hire an expert hurt the Sapienzas' defense.

The Sapienzas' final claim is that Liberty Mutual breached the duty to defend when defense counsel "did not attend" the Board's hearing on the Sapienzas' new application. Doc. 18 at ¶ 27. The Sapienzas fail to state a claim on this basis because they do not allege that Liberty Mutual engaged in any wrongdoing. That is, the Sapienzas do not allege that Liberty Mutual caused defense counsel to fail to attend the hearing or somehow overrode defense counsel's judgment that his attendance at the hearing was necessary. Absent any such facts, this Court cannot reasonably infer under Eighth Circuit precedent that Liberty Mutual breached the duty to defend. See Braden, 588 F.3d at 594.

This Court recognizes that the Sapienzas make somewhat different assertions about breach of the duty to defend in their brief. In briefing, the Sapienzas assert that Liberty Mutual "directed counsel's course of action through affirmative statements and the refusal to pay for certain activities associated with the case," "failed to allow counsel to retain an independent expert to evaluate the home or make recommendations" and "failed to require or otherwise direct counsel to appear at the court-ordered hearing before the Historic Board." Doc. 14 at 7. Some Eighth Circuit cases suggest that courts may consider allegations in response to a motion to dismiss even if those allegations are not in the complaint. Neudecker v. Boisclair Corp., 351 F.3d 361, 362 (8th Cir. 2003) (per curiam); Pratt v. Corrs. Corp. of Am., 124 F. App'x 465, 466 (8th Cir. 2005) (per curiam); Anthony v. Runyon, 76 F.3d 210, 214 (8th Cir. 1996); see also Danielson v. Huether, 355 F. Supp. 3d 849, 856 n.1 (D.S.D. 2018) (considering factual assertions in a pro se plaintiff's brief on a motion to dismiss). These cases do not help the Sapienzas, however, as the factual assertions in their brief still fall short of stating a claim for breach of the duty to defend.

First, the Sapienzas' additional allegations about Liberty Mutual directing defense counsel's conduct and refusing to pay for certain activities remain too vague to support a reasonable inference that

9

Liberty Mutual breached the duty to defend. Second, the Sapienzas' allegation that Liberty Mutual "failed to allow counsel to retain an independent expert" comes closer to alleging the necessary misconduct by Liberty Mutual, but still stops short of alleging that Liberty Mutual refused counsel's request to hire an expert or overrode his professional judgment. In any event, the Sapienzas' brief does not include any facts suggesting that the failure to hire an expert caused them damage. Third, the Sapienzas' allegation that Liberty Mutual "failed to require or otherwise direct" counsel to attend the hearing is not a viable theory of breach of the duty to defend. As explained above, courts and the draft of § 12 of the Restatement have rejected the notion that insurers are vicariously liable for any malpractice committed by defense counsel. The authors of the Restatement found no cases "holding a liability insurer liable for the torts of counsel on a theory of apparent authority or negligent supervision." Restatement of the Law of Liability Insurance § 12 reporters' note d. None of the Sapienzas' allegations allow for the plausible inference that Liberty Mutual was so closely involved in the Sapienzas' defense that it could be liable for failing to require or direct counsel to attend the Board hearing.

Rather than dismissing the Sapienzas' breach of the duty to defend claim now, this Court will give the Sapienzas 14 days from the date of this opinion to seek leave to amend their complaint if indeed there is a basis under the facts for a claim for breach of the duty to defend. This approach is more appropriate than immediate dismissal as the Sapienzas may not have contemplated in the absence of settled South Dakota precedent application of the most recent draft of § 12 of the Restatement to dismiss their breach of the duty to defend claim.

### B. Count 1: Breach of Duty to Indemnify

The Sapienzas' other claim in Count 1 is that Liberty Mutual breached the terms of the Policies by refusing to indemnify them for the damages resulting from the McDowell suit. Liberty Mutual argues that this claim fails as a matter of law because the costs the Sapienzas incurred to comply with the injunction do not constitute "damages" under the Policies. Both parties cite authority which they claim supports their interpretation of the word "damages."

10

Liberty Mutual cites several cases in which courts have held that the term "damages" in an insurance contract refers to legal damages rather than claims for equitable relief. See, e.g., Ellett Bros., Inc. v. U.S. Fid. & Guar. Co., 275 F.3d 384, 387 (4th Cir. 2001); Aetna Cas. & Sur. Co. v. Hanna, 224 F.2d 499, 503 (5th Cir. 1955); O'Brien & Assocs. v. Tim Thompson, Inc., 653 N.E.2d 956, 960–61 (Ill. App. Ct. 1995); Ladd Const. Co. v. Ins. Co of N. Am., 391 N.E.2d 568, 571–73 (Ill. App. Ct. 1979). Relying on this "technical" definition, these courts have held that the costs of complying with an injunction do not constitute damages. Ellett Bros., 275 F.3d at 388; Hanna, 224 F.2d at 503; O'Brien, 653 N.E.2d at 960; Ladd, 391 N.E.2d at 571–73.

The Sapienzas, on the other hand, cite a string of cases rejecting the technical definition of damages as inconsistent with the rule that terms in an insurance contract be given their plain and ordinary meaning. See, e.g., Lindsay Mfg. v. Hartford Accident & Indem. Co., 118 F.3d 1263, 1270–71 (8th Cir. 1997); Liberty Mut. Ins. v. Those Certain Underwriters at Lloyds, 650 F. Supp. 1553, 1560–61 (W.D. Pa. 1987); A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am., 475 N.W.2d 607, 618–21, 625 (Iowa 1991); Minn. Mining & Mfg. Co. v. Travelers Indem. Co., 457 N.W.2d 175, 179–80 (Minn. 1990). The courts in Lindsay, A.Y. McDonald, and Minnesota Mining held that costs the insured incurred when cleaning up environmental contamination constituted "damages," Lindsay, 118 F.3d at 1271; A.Y. McDonald, 475 N.W.2d at 625; Minn. Mining, 457 N.W.2d at 184, while the court in Liberty Mutual found that backpay awarded as part of a class-action lawsuit qualified as "damages," Liberty Mutual, 650 F. Supp. at 1560–61.

The Sapienzas argue that this Court should reject the technical definition of damages because South Dakota law requires that terms in an insurance contract be given their plain and ordinary meanings. Liberty Mutual responds that Lindsay, A.Y. McDonald, and Minnesota Mining are inapplicable because they concerned cleanup costs under environmental protection statutes. According to Liberty Mutual, the remedies available under environmental protection statutes explain the decisions in these cases. See Gen. Star Indem. Co. v. Lake Bluff Sch. Dist. No. 65, 819 N.E.2d 784, 792 (Ill. App. Ct. 2004) ("Statutory schemes designed for environmental protection have a unique nature that blurs the distinction between monetary compensation and the expenditure of money to comply with a mandatory injunction."); id at 794

("The costs of complying with an injunction are considered 'damages' only in special situations, such as . . . environmental litigation . . . ."); see also U.S. Fid. & Guar. Co. v. Ellet Bros., Inc., No. 3:00-3691-24, 2003 WL 22519471, at *6 (D.S.C. Mar. 5, 2003) (concluding that "analysis regarding equitable relief in the [environmental protection statute] context should be limited to those types of actions").

The parties agree that there are no South Dakota cases directly addressing whether the costs of complying with an injunction constitute "damages" under a liability insurance policy. Liberty Mutual argues, however, that the decisions in Public Entity Pool for Liability v. Score, 658 N.W.2d 64 (S.D. 2003), and Dan Nelson Automotive Group, Inc. v. Universal Underwriters Group, No. CIV 05-4044, 2008 WL 170084 (D.S.D. Jan. 15, 2008), support its position.

The Score case involved South Dakota's Public Entity Pool for Liability (PEPL fund) rather than an insurance policy. The issue in Score was whether a state employee who had been sued for negligence could recover attorney's fees incurred in a separate declaratory judgment action the PEPL fund brought to seek a declaration that it had no duty to defend the negligence suit. 658 N.W.2d at 66. The employee argued that the attorney's fees constituted "defense costs" under the PEPL fund's memorandum of coverage. Id. at 70. The Supreme Court of South Dakota disagreed, explaining that while the PEPL fund covered "defense costs," these defense costs had to be "generated by and related to *a claim*," which the memorandum of coverage defined as "any claim or suit for damages." Id. (cleaned up). The Supreme Court of South Dakota concluded that the employee could not recover attorney's fees for the declaratory judgment action because it was not a "claim or suit for damages." Id.

Liberty Mutual contends that Score "implie[s]" that the Supreme Court of South Dakota would hold that the costs of complying with an injunction do not constitute damages. Doc. 12 at 17. As the Sapienzas point out, however, Score was not a typical insurance case. Indeed, the PEPL fund "is not insurance" and state employees do not pay premiums for coverage or have a contractual relationship with the PEPL fund. Score, 658 N.W.2d at 69–70. Moreover, South Dakota's insurance code does not apply to the PEPL fund because subjecting the fund to these "duties and obligations" would "adversely affect the [fund's] ability to provide members cost-effective liability coverage . . . ." Id. at 69 (citation omitted).

Beyond these differences, Score did not consider whether costs associated with an injunction can constitute damages, but only decided that a declaratory judgment action brought to determine the existence of coverage was not a "claim or suit for damages." Thus, while Score may provide some limited insight into how the Supreme Court of South Dakota would rule on the coverage issue here, it is far from controlling or conclusive.

Dan Nelson provides even less insight into how the Supreme Court of South Dakota would decide the issue in this case. The issue in Dan Nelson was whether a petition filed against the plaintiffs by the Iowa Attorney General constituted a civil "suit" for "damages" such that the insurer had a duty to defend. The policy in Dan Nelson defined "damages" as "amounts awardable by a court of law," and its definition of "suit" specifically excluded "equitable actions." 2008 WL 170084, at *6. Relying on the nature of the petition along with the Iowa law on which it was based, this Court concluded that the petition was an equitable action even though one of the requests for relief in the petition was a judgment "for all amounts of money that individual consumers have a right to recover." Id. at *6–8. There is a "significant distinction," this Court explained, "between actions brought by individual consumers and an attorney general's petition alleging violations by Plaintiffs of the Iowa Consumer Fraud Act." Id. at *8. Dan Nelson is too different from this case to be controlling.

The closest this Court came to finding an authoritative South Dakota case is Taylor v. Imperial Casualty & Indemnity Co., 144 N.W.2d 856 (S.D. 1966). The plaintiffs in Taylor sued their insurer to recover expenses they had incurred to comply with an injunction. Id. at 858. These expenses included the cost of digging trenches to prevent gasoline from the plaintiffs' filling tanks from leaking into the surrounding streets and businesses. Id. The plaintiffs' insurance policy provided that the insurer would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." Id. at 857. The Supreme Court of South Dakota held that the plaintiffs could recover the cost of complying with the injunction without specifically addressing whether these costs constituted "damages" under the insurance policy. Id. at 858–59. Thus, Taylor suggests that the Supreme Court of South Dakota might treat

13

the costs of complying with an injunction as "damages," but it is not conclusive. The policy in Taylor had different coverage provisions and did not appear to exclude coverage for property damage to property owned by the insured.

A case decided last month by the Supreme Court of South Dakota suggests that the Court might give a technical meaning to a common word like "damages" in an insurance contract. In discussing the term "accident" in an insurance policy, the Supreme Court of South Dakota reasoned: "'Accident' is not defined by the policy. However, the term 'accident' in the insurance context has been commonly viewed as something that causes an 'unexpected' or 'unanticipated' injury or damage." Geidel v. De Smet Farm Mut. Ins. Co. of S.D., #28627, 2019 WL 1590978, at *4 (S.D. Apr. 10, 2019). Geidel is far from controlling here. "Property damage" is defined in the Liberty Mutual Policies, but the policies are silent as to coverage for an injury from complying with an injunction. Though the Policies exclude coverage for property damage to property owned by the insured, Docs. 1-2 at 20, 1-3 at 8, here the insureds were complying with an injunction designed to remedy damage inflicted on the McDowells. See Unigard Mut. Ins. v. McCarty's, Inc., 756 F. Supp. 1366, 1369 (D. Idaho 1988) (limiting application of a similar exclusion "when the insured becomes liable to third parties for events confined exclusively to the insureds' premises"); see also Aetna Ins. v. Aaron, 685 A.2d 858, 866–67 (Md. Ct. Spec. App. 1996).

This Court may certify a question of law to the Supreme Court of South Dakota "if there are questions of law of [the State of South Dakota] involved in any proceeding before the certifying court which may be determinative of the cause pending in the certifying court and it appears to the certifying court and to the Supreme Court [of South Dakota] that there is no controlling precedent in the decisions of the Supreme Court of this state." SDCL § 15-24A-1. It is a question of law whether the costs the Sapienzas incurred to comply with the injunction constitute covered "damages" under the Policies. The answer to this question will be determinative of the Sapienzas' claim that Liberty Mutual breached the insurance contract by refusing to indemnify them for these costs. It also appears that there are no controlling decisions by the Supreme Court of South Dakota on this question. This Court therefore will certify the following question to the Supreme Court of South Dakota: Do the costs incurred by the Sapienzas to comply with the injunction

14

constitute covered "damages" under the Policies such that Liberty Mutual must indemnify the Sapienzas for these costs?[2]

### C. Counts 2 and 3: Bad Faith

The parties refer to Counts 2, 3, and 4 as the Sapienzas' "bad faith claims." The Sapienzas' complaint is not entirely clear about the basis for Counts 2 and 3. Count 2 alleges that Liberty Mutual breached the implied covenant of good faith and fair dealing by placing "its interests above the Sapienzas," engaging "in deceptive and bad faith conduct," withholding and misrepresenting information, acting "contrary to the Sapienzas' justified expectations," and engaging "in subterfuge and evasions." Doc. 1 at ¶ 38. Count 2 "repeat[s] and reallege[s] all of the preceding paragraphs of the Complaint," rather than identifying the particular facts on which the count is based. Count 3, entitled "Breach of Fiduciary Duty," is even more vague. It simply incorporates by reference all the preceding paragraphs, asserts that Liberty Mutual owed the Sapienzas a duty of equal consideration, and alleges that Liberty Mutual's "conduct as more fully described herein constitutes a breach of its fiduciary duties." Doc. 1 at ¶¶ 40–43.

The Sapienzas clarify in their brief that Counts 2 and 3 concern the defense they received in the McDowell lawsuit. Doc. 14 at 14–15. They argue that Liberty Mutual "hindered" their defense and that this constitutes bad faith and a failure to give their interests equal consideration. Doc. 14 at 14–15. As the Sapienzas tell it, this misconduct began once Liberty Mutual determined that it did not have to pay for the costs associated with injunctive relief. Doc. 14 at 14–15; see also Doc. 1 at ¶ 24 (alleging that the Sapienzas and Liberty Mutual had diverging interests once Liberty Mutual issued its denial letter). Liberty Mutual argues that these allegations fail to state a bad faith claim because there has been no breach of the insurance

---

[2] It is not entirely clear from the Sapienzas' brief and complaint whether they seek to recover not only the cost to demolish the house, but also to build it. The Sapienzas' complaint claims that they incurred in excess of $60,000 in demolition costs, yet generally allege damages of in excess of $75,000 without elaborating on what other damages are sought. Liberty Mutual thinks that the Sapienzas are trying to recover both the building and demolishing costs. See Doc. 12 at 15. If the Sapienzas are seeking to recover for the construction costs as well, that seems to be a novel issue of damages appropriate to address on certification. If the Sapienzas are not seeking benefits under the Policies exceeding demolition costs, then, in light of the failure to state other claims at this time, their case may belong in state court anyway as less than $75,000 exclusive of interest in costs would be at issue under 28 U.S.C. § 1332.

15

contract and because the Sapienzas have not adequately alleged that Liberty Mutual's conduct caused them damage. Liberty Mutual also argues that Counts 2, 3, and 4 should be treated as first-party bad faith claims rather than third-party claims.

South Dakota law recognizes both first and third-party bad faith claims. Hein v. Acuity, 731 N.W.2d 231, 235 (S.D. 2007). "Third-party bad faith is traditionally based on principles of negligence and arises when an insurer wrongfully refuses to settle a case brought against its insured by a third-party." Id. An insurer commits third-party bad faith when it breaches "its duty to give equal consideration to the interests of its insured when making a decision to settle a case." Id. First-party bad faith, in contrast, "is an intentional tort and typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured." Id. The oft-repeated test for first-party bad faith claims requires the plaintiff to show "(1) an absence of a reasonable basis for denial of policy benefits, and (2) the insurer's knowledge of the lack of a reasonable basis for denial." Zochert v. Protective Life Ins. Co., 921 N.W.2d 479, 490 (S.D. 2018) (cleaned up and citation omitted). Despite the phrasing of this test, first-party bad faith "can extend to situations beyond mere denial of policy benefits." Dakota, Minn. & E. R.R. v. Acuity, 771 N.W.2d 623, 629 (S.D. 2009) (citation omitted). A first-party bad faith claim in South Dakota may be based on a "failure to comply with a duty under the insurance contract," but still must involve "an insurance company consciously [engaging] in wrongdoing." Id. (citation omitted).

Here, the Sapienzas allege that Liberty Mutual committed a tort by failing to give their interests equal consideration. Doc. 1 at ¶¶ 38, 41–42; Doc. 14 at 13–15. This duty of equal consideration, however, only applies to third-party bad faith claims, i.e. those arising in the settlement context. Indeed, the Supreme Court of South Dakota has always focused on an insurer's unreasonable refusal to settle a claim against its insured when discussing third-party bad faith. See Zochert, 921 N.W.2d at 489; Bertelsen v. Allstate Ins. Co., 796 N.W.2d 685, 700 (S.D. 2011) ("[T]hird party bad faith occurs when an insurer breaches its duty to give equal consideration to the interests of its insured when making a decision to settle a case brought against its insured by a third party." (citation and internal marks omitted)); Hein, 731 N.W.2d at 235 (explaining that third-party bad faith "arises when an insurer wrongfully refuses to settle a case brought

against its insured by a third-party"). And the Court recently explained in Zochert that while it had "recognized a *tort* duty of equal consideration in insurance bad faith cases dealing with the third-party claims process," it was not inclined to apply this duty "outside of the realm of third-party bad faith tort litigation." 921 N.W.2d at 489. According to the Supreme Court of South Dakota, requiring equal consideration in the first-party context—where the insurer does not act like a fiduciary as it does when considering whether to settle a claim by a third party against its insured— "could fundamentally alter the rights and obligations of insureds and insurers contained in the express contractual provisions of the policy." Id. at 489–90. Relying on Zochert, this Court predicted that the Supreme Court of South Dakota would hold that there is no duty of equal consideration in the first-party bad faith context. Lead GHR Enters., Inc. v. Am. States Ins., Civ. 16-5026-JLV, 2019 WL 918253, at *13 (D.S.D. Feb. 25, 2019).

The Sapienzas' claim that Liberty Mutual committed bad faith by "hindering" their defense does not arise in the settlement context and is not a third-party claim. As such, the Sapienzas must satisfy the two-prong test that applies to first-party bad faith claims rather than the "equal consideration" test used in the third-party context.[3] See Restatement of the Law of Liability Insurance § 24 cmts. a, c (explaining that the Restatement limits the equal consideration standard to situations where the insurer has made an unreasonable settlement decision); Stephen S. Ashley, Bad Faith Actions Liability & Damages § 3:1 (updated Sept. 2018) ("An insurer's bad faith refusal to defend involves the denial of a benefit that the policy expressly promises to the insured. One ought, therefore, to determine whether a refusal to defend constitutes bad faith according to first-party bad faith standards . . . ."); William T. Barker & Ronald D. Kent, New Appleman Insurance Bad Faith Litigation, Second Ed., § 17.03 (Matthew Bender, Rev. Ed.)

---

[3]This Court is treating Counts 2 and 3 as one bad faith claim concerning the alleged inadequate defense the Sapienzas received. Count 3 alleges that Liberty Mutual breached the duty of equal consideration, a duty that does not apply to the Sapienzas' claim. Doc. 1 at ¶ 41. Although Count 3 is entitled "Breach of Fiduciary Duty," the Sapienzas have not adequately plead (and their brief has not addressed) the elements of breach of fiduciary duty. See Chem-Age Indus., Inc. v. Glover, 652 N.W.2d 756, 772 (S.D. 2002) (listing elements of breach of a fiduciary and describing the type of relationship that is necessary to support a fiduciary duty); see also Haanen v. N. Star Mut. Ins., 1:16-CV-01007-CBK, 2016 WL 6237806, at *3 (D.S.D. Oct. 25, 2016) (holding that a "separate tort action for the breach of a fiduciary duty is not recognized in South Dakota when the case involves first party insurance coverage").

("Bad faith breach of the duty to defend is actionable, but under the same standards as delay or denial of any other first-party benefit.").

The Sapienzas cannot meet the first-party bad faith test for essentially the same reasons why they failed to state a claim for breach of the duty to defend. Many of the allegations in the Sapienzas' complaint lack sufficient detail to support the reasonable inference that Liberty Mutual breached any duty it owed to the Sapienzas. In particular, these allegations fail to link Liberty Mutual's conduct to the supposedly deficient defense the Sapienzas received. And other allegations, such as the allegation that Liberty Mutual failed to hire an expert, do not adequately allege that Liberty Mutual's misconduct caused the Sapienzas damages. The Sapienzas' bad faith claim based on Liberty Mutual "hindering" their defense is dismissed for failure to state a claim.

### D. Count 4: Bad Faith

Count 4 of the Sapienzas' complaint alleges that Liberty Mutual engaged in bad faith because it did not have a reasonable basis for refusing to indemnify them for damages caused by the McDowell law suit. Doc. 1 at ¶¶ 45–48. To succeed on this first-party bad faith claim, the Sapienzas must show that: (1) Liberty Mutual lacked a reasonable basis for refusing to indemnify them and (2) Liberty Mutual knew of, or recklessly disregarded, the lack of a reasonable basis for this refusal. Zochert, 921 N.W.2d at 490; see also S.D. Network LLC v. Twin City Fire Ins. Co., 4:16-CV-04031-KES, 2017 WL 4233019, at *8–9 (D.S.D. Sept. 22, 2017) (applying this test to a claim that a liability insurer had committed bad faith by refusing to defend and indemnify the insured). An insurer has a reasonable basis for denying benefits if the claim is "fairly debatable" in fact or law. Dakota, Minn. & E. R.R., 771 N.W.2d at 630.

Liberty Mutual's decision that the costs of complying with the McDowell lawsuit do not constitute "damages" under the Policies is fairly debatable under the law. As explained above, this Court is certifying a question to the Supreme Court of South Dakota because there are no controlling cases concerning whether expenses associated with an injunction qualify as damages in the insurance context. Moreover, cases on this issue from some other jurisdictions support Liberty Mutual's decision to deny coverage to the Sapienzas. See Ellett Bros., 275 F.3d at 388 (holding that the costs of complying with an injunction do not

constitute damages); Hanna, 224 F.2d at 503 (same); O'Brien, 653 N.E. 2d at 960 (same); Ladd, 391 N.E. 2d at 571–73 (same). Although the Sapienzas cited cases adopting a broader view of damages, these cases merely show that there is a split of authority on the issue, not that Liberty Mutual lacked a reasonable basis for its decision. Indeed, the cases the parties cite provide good arguments both for and against concluding that the costs of complying with an injunction constitute damages recoverable under the Policies.

The Sapienzas contend that it would be premature to dismiss Count 4 because "there is no information in the record regarding Liberty Mutual's investigation of the claim," and such information "is essential to the inquiry into whether or not" Liberty Mutual had a reasonable basis to deny coverage. Doc. 14 at 14. But this Court does not need to know about Liberty Mutual's investigation to conclude that it did not act in bad faith in declining to pay for costs to remove the home. After all, there is no dispute that the state court awarded the McDowells only injunctive relief and did not require the Sapienzas to pay the McDowells any monetary damages. And whether this injunctive relief constituted "damages" under the Policies is a legal question rather than a factual one. Thus, even if Liberty Mutual's investigation somehow was inadequate, it would still have a reasonable basis under South Dakota law for denying coverage for costs the Sapienzas incurred in complying with the injunction. See Anderson v. W. Nat'l Mut. Ins. Co., 857 F. Supp. 2d 896, 905 (D.S.D. 2012) ("[A] failure to investigate, without more, does not constitute bad faith."); 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 207:25 (3d ed. 2011) ("An imperfect investigation, standing alone, is not sufficient cause for recovery where the insurer, in fact, has objectively reasonable basis to deny coverage."). Count 4 of the Sapienzas' complaint is dismissed for failure to state a claim.

### IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that Liberty Mutual's Motion to Dismiss, Doc. 9, is granted in part and denied in part, in that the Sapienzas' claims that Liberty Mutual breached the insurance contract by refusing to indemnify them and providing them with an inadequate defense may survive Liberty Mutual's motion to dismiss. If the Sapienzas do not amend their claim that Liberty Mutual breached the insurance contract by providing

them with an inadequate defense within fourteen days, this claim will be dismissed for failure to state a claim. The Sapienzas' bad faith claims—Counts 2, 3, and 4—are dismissed for failure to state a claim. It is further

ORDERED that under SDCL § 15-24A-1, this Court certifies the following question to the Supreme Court of South Dakota:

> Do the costs incurred by the Sapienzas to comply with the injunction constitute covered "damages" under the Policies such that Liberty Mutual must indemnify the Sapienzas for these costs?

It is further

ORDERED that the Clerk of Court shall forward this certification order under official seal to the Supreme Court of South Dakota, under SDCL § 15-24A-5. It is further

ORDERED that this case will be stayed (other than the possible motion to amend the complaint and ruling thereon) while the certified question is pending before the Supreme Court of South Dakota.

DATED this 17th day of May, 2019.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE