UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| JOSEPH SAPIENZA, and SARAH JONES SAPIENZA, M.D., <br><br> Plaintiffs, <br><br> vs. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY, <br><br> Defendant. | 3:18-CV-03015-RAL <br><br><br> OPINION AND ORDER GRANTING MOTION TO AMEND |

Plaintiffs, Joseph Sapienza and Dr. Sarah Jones Sapienza, built a house and then had to tear it down to comply with an injunction issued against them in a state court action. The Sapienzas' insurer, Liberty Mutual Fire Insurance Company (Liberty Mutual), defended them in the state court action but refused to indemnify them for the costs of complying with the injunction. The Sapienzas sued Liberty Mutual in this Court, alleging breach of the duty to defend, breach of the duty to indemnify, and bad faith. Doc. 1. In an earlier order, this Court dismissed the Sapienzas' bad faith claims under Rule 12(b)(6), gave them fourteen days to cure the deficiencies in their claim for breach of the duty to defend, and certified a question to the Supreme Court of South Dakota on whether the costs the Sapienzas incurred to comply with the injunction constitute covered damages under their Policies. Doc. 16. The Sapienzas have now filed a motion and proposed amended complaint alleging more facts to support their claim for breach of the duty to defend, and making claims for breach of contract seeking indemnity for the cost of building their home as well as the

1

cost of demolishing it and for bad faith based on Liberty Mutual's alleged mishandling of the Sapienzas' defense. Doc. 19-1. Liberty Mutual opposes the Sapienzas' motion to amend, arguing the amendments are futile. Doc. 22.

## I. Facts Relevant to Motion to Amend

In 2013, the Sapienzas purchased a home in the McKennan Park Historic District in Sioux Falls, South Dakota. Doc. 19-1 at ¶¶ 6–7. They decided to raze the existing house and build a new home on the property. Doc. 19-1 at ¶ 7. They hired an architect to design the home and submitted a proposal to the Sioux Falls Board of Historic Preservation (the Board). Doc. 19-1 at ¶¶ 8–9. The Board approved the proposal and the Sapienzas hired a contractor to build their home. Doc. 19-1 at ¶¶ 9–10.

During construction, the Sapienzas' neighbors, Pierce and Barbara McDowell, became concerned about the size and location of the new home. McDowell v. Sapienza, 906 N.W.2d 399, 403 (S.D. 2018); Doc. 19-1 at ¶ 11. In early May 2015, the McDowells' lawyer sent the Sapienzas a cease-and-desist letter maintaining that the home violated height and setback regulations. McDowell, 906 N.W.2d at 403. The Sapienzas did not stop construction, so the McDowells sued them in state court in mid-May 2015. Id.; Doc. 19-1 at ¶ 11.

The McDowells' complaint alleged that the height and proximity of the Sapienzas' home prevented the McDowells from using their fireplace, blocked the natural light the McDowells previously enjoyed, and decreased the value of their home. Doc. 19-1 at ¶ 11; Doc. 19-2 at 4–5. Count 1 of the complaint sought a permanent injunction requiring the Sapienzas to modify or relocate their house. Doc. 19-2 at 5–6. Count 2, entitled "Negligence," sought this same injunctive relief and, in the alternative, damages. Doc. 19-2 at 6–7. Count 3 alleged that the Sapienzas' home was a nuisance and requested an injunction and damages. Doc. 19-2 at 7–8.

The Sapienzas retained a South Dakota attorney (defense counsel) to defend them against the McDowell suit. Doc. 19-1 at ¶ 12; Doc. 11-1. Defense counsel filed an answer for the Sapienzas on June 12, 2015. Doc. 11-1. The Sapienzas notified their insurer Liberty Mutual of the McDowell suit on August 24, 2015. Doc. 19-1 at ¶ 19; Doc. 19-6 at 3. Liberty Mutual insured the Sapienzas under a Homeowner's Policy and an Excess Policy. Doc. 19-1 at ¶¶ 13–18; Docs. 19-3, 19-4. Liberty Mutual agreed to defend the Sapienzas from the McDowell suit under a reservation of rights, and defense counsel previously retained by the Sapienzas continued defending the Sapienzas with Liberty Mutual then paying the attorney's fees. Doc. 19-1 at ¶ 20; Doc. 19-6.

The McDowell suit went to trial in June 2016. Doc. 19-5 at 2; Doc. 19-1 at ¶ 25. The state trial judge issued a decision and order in December 2016 granting the McDowells a mandatory injunction against the Sapienzas. The injunction required the Sapienzas to bring their house into compliance with federal and state regulations for buildings in historic districts or rebuild it. Doc. 19-5 at 2–3, 25, 29. The state trial judge did not order the Sapienzas to pay any monetary damages to the McDowells. Doc. 19-5.

Liberty Mutual sent the Sapienzas a letter in early March 2017 stating that it would "continue to provide a defense to you for the Lawsuit, including any appeal," but that it would not provide any coverage for the "injunctive relief" ordered by the state trial judge. Doc. 19-6 at 2. According to Liberty Mutual, the injunctive relief and the costs of complying with it did not constitute "damages" under the Policies. Doc. 19-6 at 4. Defense counsel continued to represent the Sapienzas during their appeal to the Supreme Court of South Dakota.

The Supreme Court of South Dakota affirmed the state trial court's order of injunctive relief in early 2018. McDowell, 906 N.W.2d 399. The Court affirmed that regulations concerning

3

construction in historic districts applied to the Sapienzas' house and that the house violated these regulations because it was more than eight feet taller than the permitted height. Id. at 405–06. As to the injunction, the Court held that "[p]ecuniary compensation would not provide adequate relief" for the harm the Sapienzas' home caused to the McDowells and the McKennan Park District. Id. at 407. The Court remanded the case "for further proceedings consistent with" its opinion. Id. at 411.

After the remand, the state judge issued an order giving the Sapienzas six weeks to submit plans to the Board to bring their house into compliance with the regulations for historical districts. Doc. 23-4; Doc. 19-1 at ¶ 37. If the plans were not approved, the order explained, the state judge would "exercise all remedies available consistent with" its judgment. Doc. 23-4. The Sapienzas submitted new plans for their home, Doc. 19-1 at ¶ 37, after which the McDowells' attorney sent a letter to the City of Sioux Falls opposing the plans, Doc. 19-8. The McDowells' attorney argued that the plans failed to address all of the ways the Sapienzas' house violated the regulations and that the Sapienzas should not be allowed to appeal an adverse decision by the Board. Doc. 19-8 at 4–6. He also noted that an expert in historic standards was reviewing the Sapienzas' plans and that he would provide the expert's opinion to the Board before the scheduled hearing. Doc. 19-8 at 4–5. An attorney representing the City of Sioux Falls forwarded the letter to defense counsel, who in turn forwarded the letter to the Sapienzas. Doc. 19-8 at 2. Defense counsel's email to the Sapienzas remarked that the letter "confirms that the McDowells intend to pull out all stops to challenge the proposed renovation of your home." Doc. 19-8 at 2. Defense counsel did not attend the hearing before the Board. Doc. 19-1 at ¶¶ 46–48. The Board refused to approve the new application and, based on arguments by the McDowells' lawyer, according to the Sapienzas, prohibited the Sapienzas from submitting any future plans for approval. Doc. 19-1 at ¶ 47.

In May 2018, the state judge issued a writ of execution giving the Sapienzas thirty days to demolish their home. Doc. 19-1 at ¶ 49. The Sapienzas complied with the writ and incurred in excess of $60,000 in demolition-related expenses. Doc. 19-1 at ¶ 50.

In a previous Opinion and Order Granting in Part Defendant's Motion to Dismiss and Certifying Question to Supreme Court of South Dakota, Doc. 16, this Court allowed "claims that Liberty Mutual breached the insurance contract by refusing to indemnify [the Sapienzas] and providing them with an inadequate defense" to "survive Liberty Mutual's motion to dismiss." Doc. 16 at 19. This Court certified a question to the Supreme Court of South Dakota of whether "the costs incurred by the Sapienzas to comply with the injunction constitute covered 'damages' under the Policies such that Liberty Mutual must indemnify the Sapienzas for these costs." Doc. 16 at 20. This Court allowed the Sapienzas fourteen days to "amend their claim that Liberty Mutual breached the insurance contract by providing them with an inadequate defense" so as to avoid dismissal of that claim, and this Court dismissed the Sapienzas' bad faith claims for failure to state claims. Doc. 16 at 19–20. The Sapienzas' motion and proposed amended complaint seek to plead breach of the duty to defend by bolstering factual allegations, add an explicit claim for the construction costs of their home as part of the indemnity claim, and attempt to add back a first-party bad faith claim for failure to defend. Doc. 19-1.

## II. Standard of Review

Rule 15(a) of the Federal Rules of Civil Procedure establishes a liberal approach towards granting motions to amend. See Fed. R. Civ. P. 15(a)(2) (explaining that courts should "freely" give leave to amend "when justice so requires"). Denial of a motion to amend "is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated."

Hillesheim v. Myron's Cards & Gifts, Inc., 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted). There is no evidence of undue delay or bad faith in the Sapienzas' request to amend the complaint, and Liberty Mutual does not argue that the proposed amendments would cause it prejudice. Rather, Liberty Mutual's reason for opposing the motion is that the proposed amendment would be futile.

An amendment is futile if it "could not withstand a motion to dismiss under Rule 12(b)(6)." Id. (citation omitted). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id., "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertions devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (cleaned up and citation omitted).

### III. Analysis

#### A. Breach of the Duty to Defend

The Sapienzas' initial complaint alleged that Liberty Mutual had a contractual duty to defend them against the McDowell suit and that Liberty Mutual breached this duty by failing to provide them with an adequate defense. As there is no South Dakota precedent on an insurer's liability for providing an inadequate defense, this Court had to predict how the Supreme Court of

South Dakota would treat the Sapienzas' claim. Doc. 16 at 6. Because the Supreme Court of South Dakota has found the Restatements "persuasive in many instances," Chem-Age Indus., Inc. v. Glover, 652 N.W.2d 756, 770 (S.D. 2002), this Court predicted that it would follow the draft Restatement addressing insurer liability for an improper defense, Doc. 16 at 6. See also Beau Townsend Ford Lincoln, Inc. v. Don Hinds Ford, Inc., 759 F. App'x 348, 353 (6th Cir. 2018) ("[W]e may look to an applicable Restatement . . . for guidance when there is no controlling state law on point [and] the state has indicated that it considers the Restatements to be persuasive authority." (cleaned up and citation omitted)). The draft Restatement on liability insurance has since been finalized.

The Restatement provides two scenarios under which the insurer may be liable for providing an inadequate defense:

> (1) If an insurer undertakes to select counsel to defend a legal action against the insured and fails to take reasonable care in so doing, the insurer is subject to liability for the harm caused by any subsequent negligent act or omission of the selected counsel that is within the scope of the risk that made the selection of counsel unreasonable.
> (2) An insurer is subject to liability for the harm caused by the negligent act or omission of counsel provided by the insurer to defend a legal action when the insurer directs the conduct of the counsel with respect to the negligent act or omission in a manner that overrides the duty of the counsel to exercise independent professional judgment.

Restatement of the Law of Liability Insurance § 12 (Am. Law Inst. June 2019 update). To be liable under § 12, then, the insurer itself must have engaged in some misconduct. Indeed, § 12 rejected the rule applied by a minority of states that insurers are vicariously liable for all malpractice by defense counsel they hire. Id. cmts. d, e & reporters' notes d, e; see also George M. Cohen, Liability of Insurers for Defense Counsel Malpractice, 68 Rutgers Univ. L. Rev. 119, 125 n.37 (2015) (stating that a majority of jurisdictions do not hold insurers vicariously liable for the actions of defense attorneys they hire). This minority rule is unnecessary, the Restatement

7

reasoned, because defense counsel is in the best position to prevent harm from his or her own malpractice and because an attorney with adequate liability insurance is just as able as the insurer to spread the risk of loss. Restatement of the Law of Liability Insurance § 12 cmts. d, e. Beyond that, the Restatement explained, a lawyer hired by an insurance company to represent an insured is not an agent of the company such that the company should be held vicariously liable for the lawyer's misconduct. Id. cmt. d & reporters' note d. Instead, the lawyer is an independent contractor who owes the insured a duty to exercise his or her own judgment when representing the insured. Id.; see also St. Paul Fire & Marine Ins. v. Engelmann, 639 N.W.2d 192, 200 n.7 (S.D. 2002) (explaining that "attorneys representing insureds on behalf of carriers owe an undeviating fealty to the insureds").

The Sapienzas have amended their complaint to try to state a claim under § 12(2). Before considering these amendments, however, this Court addresses Liberty Mutual's argument that it was error to rely on § 12. Liberty Mutual contends that the Supreme Court of South Dakota would not adopt § 12(2) because the American Law Institute created the section "out of a complete absence of precedent." Doc. 22 at 19. But that is simply not true. There are cases supporting the Restatement's position that insurer's can be liable for overriding defense counsel's independent professional judgment. See, e.g., Progressive Nw. Ins. Co. v. Gant, No. 15-9267-JAR-KGG, 2016 WL 4430669, at *4 (D. Kan. Aug. 22, 2016) ("In Kansas, 'an attorney hired by an insurer to represent an insured can be considered an agent of the insured, making the insurer vicariously liable for the attorney's actions—if, at the time in question, the attorney's acts or omissions were directed, commanded, or knowingly authorized by the insurer.'" (quoting Hackman v. W. Agric. Ins. Co., 275 P.3d 73 (Table), 2012 WL 1524060, at *16 (Kan. Ct. App. Apr. 27, 2012) (per curiam))); Ingersoll-Rand Equip. Corp. v. Transp. Ins. Co., 963 F. Supp. 452, 455 (M.D. Pa. 1997)

(explaining that although insurers are not vicariously liable for a lawyer's malpractice, they may be liable for their own misconduct "where, for example, [they] exercise[] an abnormal degree of control over litigation"); Gibson v. Casto, 504 S.E.2d 705, 708 (Ga. Ct. App. 1998) (rejecting argument that insurer was liable for attorney's omissions where there was no evidence that the insurer controlled the attorney's decisions or that the attorney acted as the insurer's agent); Mentor Chiropractic Ctr., Inc. v. State Farm Fire & Cas. Co., 744 N.E.2d 207, 211 n.3 (Ohio Ct. App. 2000) (noting that while retained counsel's status as an independent contractor generally prevents an insurer from being liable for counsel's negligence, "if there is evidence to show that an insurance company interfered with the strategy of the counsel it retained, then under a given fact scenario, such counsel might be found not to be an independent contractor"); Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 697 (Tenn. 2002) (holding that an insurer can be liable "for the acts or omissions of an attorney hired to represent an insured when those acts or omissions were, at least in part, directed, commanded, or knowingly authorized by the insurer"); James M. Fischer, Insurance Law: A guide to Fundamental Principles, Legal Doctrines, and Commercial Practices § 8.7 (2d ed. 2016) ("[M]any courts impute counsel's negligence to the insurer when the insurer directs, commands, or authorizes counsel's conduct that counsel performs negligently."). The authority on this point might not be overwhelming, but the American Law Institute did not fashion § 12(2) out of whole cloth as Liberty Mutual contends. Instead, § 12(2) follows the majority rule that insurers are not vicariously liable for defense counsel's errors while at the same time recognizing that insurers can be liable for their own misconduct. Liberty Mutual has not made a convincing argument for why the Supreme Court of South Dakota would protect an insurer from liability in the rare instance when the insurer is able to override counsel's independent professional judgment and thereby harm the insured. See Allan D. Windt, Insurance Claims &

9

Disputes: Representation of Insurance Companies & Insureds § 4.42 (6th ed. updated April 2019) ("If counsel breaches a duty to the insured, either at the company's request or with the company's knowledge and consent, the insurer should be held accountable . . . ." (footnote omitted)).

Turning to the amended complaint, the Sapienzas allege that Liberty Mutual directed defense counsel not to contact experts in the field of historic districts and regulations, not to present expert testimony before the state court, not to respond to the written arguments the McDowells submitted to the Board, and not to attend the Board hearing on the Sapienzas' proposed renovations to their home. Doc. 19-1 at ¶ 55. The Sapienzas further allege that Liberty Mutual "took steps to overrule [defense counsel's] professional judgment," including telling defense counsel that he would not be paid for "necessary legal tasks during the discovery stage" of the state court action; for "interviewing, hiring, and producing an expert witness;" for responding in writing to the McDowells' arguments to the Board; and for attending and representing the Sapienzas at the Board meeting. Doc. 19-1 at ¶ 56. Liberty Mutual nevertheless argues that the amended complaint is deficient because the Sapienzas fail to allege that it was defense counsel's independent professional judgment that these services were necessary and that Liberty Mutual overrode this judgment.

The Sapienzas' proposed amendments are just enough to "nudge[] their claim[] across the line from conceivable to plausible," Twombly, 550 U.S. at 570, and doubts about proof being improbable or recovery remote and unlikely do not justify denying leave to amend, id. at 556. True, many of the Sapienzas' new allegations are based on "information and belief." See Doc. 19-1 at ¶¶ 24, 38, 45–46. But plaintiffs may plead in this manner when the facts are within the defendant's control, GSAA Home Equity Tr. 2006-2 ex rel. LL Funds LLC v. Wells Fargo Bank, N.A., 133 F. Supp. 3d 1203, 1221 (D.S.D. 2015), and the allegations are not "pure speculation,"

Pope v. Fed. Home Loan Mortg. Corp., 561 F. App'x 569, 573 (8th Cir. 2014) (per curiam) (citation omitted). The Sapienzas meet this standard. They assert that they haven't been given all the communications between Liberty Mutual and defense counsel and that discovery of these communications is "necessary" to craft a more specific pleading.[1] Doc. 24 at 4. The Sapienzas' amended complaint does not provide much of a factual basis for their "belief" that Liberty Mutual engaged in the alleged misconduct, but it goes beyond pure speculation. Taking the Sapienzas' factual allegations as true and drawing all inferences in their favor,[2] this Court finds that the Sapienzas' proposed amendments to their claim for breach of the duty to defend are not futile.[3]

**B. Bad Faith Claim**

As this Court explained in its prior order, the Sapienzas must meet South Dakota's first-party bad faith test to succeed on their claim for bad faith breach of the duty to defend. This test requires the plaintiff to show "(1) an absence of a reasonable basis for denial of policy benefits,

---

[1] The Sapienzas' attorney acknowledges that defense counsel gave her a "substantial" portion of the Sapienzas' case file after the deadline for the motion to amend had passed. Doc. 24 at 4. However, she claims that she has reviewed the file and "believes that additional communications between Liberty Mutual and [defense counsel] were omitted." Doc. 24 at 4.

[2] This Court of course does not have to take as true legal conclusions in pleadings or in briefing. For instance, nothing in this Opinion and Order should be read as adopting the Sapienzas' assertion in briefing that Liberty Mutual by having "signaled" to defense counsel "that their defense of the Sapienzas would end if injunctive relief was ordered effectively overrode his professional judgment at all stages of the lawsuit." Doc. 24 at 3–4. The Sapienzas' argument from § 12(2) is too broad. The comments to the Restatement for § 12(2) provide an illustration that an insurer would be liable if defense counsel informed the insurer that, in her professional judgment, an independent medical examination and an expert were necessary, but the insurer directed counsel not to incur these expenses. Restatement of the Law of Liability Insurance § 12 cmt. e, illus. 4. But the insurer would not be liable if defense counsel "independently chose not to conduct an independent medical examination or to retain the damages expert without consulting with the [insurer]." Id. cmt. e, illus. 5.

[3] Liberty Mutual also argues that defense counsel's failure to attend the Board meeting or respond to the McDowells' written arguments fail as a matter of law because the Board meeting was not part of the defense of the McDowell suit. This Court thinks it better to address that argument on a motion for summary judgment, when the parties can provide more detail about the hearing and their communications leading up to it.

and (2) the insurer's knowledge of the lack of a reasonable basis for denial." Zochert v. Protective Life Ins. Co., 921 N.W.2d 479, 490 (S.D. 2018) (cleaned up and citation omitted). Despite the phrasing of the test, first-party bad faith "can extend to situations beyond mere denial of policy benefits." Dakota, Minn. & E. R.R. v. Acuity, 771 N.W.2d 623, 629 (S.D. 2009) (citation omitted). A first-party bad faith claim in South Dakota may be based on a "failure to comply with a duty under the insurance contract," but still must involve "an insurance company consciously [engaging] in wrongdoing." Id. (citation omitted).

This Court dismissed the Sapienzas' previous bad faith claim "for essentially the same reasons" it held that the Sapienzas did not state a claim for breach of the duty to defend. Doc. 16 at 18. The Sapienzas have now pleaded a thin but plausible claim for breach of the duty to defend. If this claim fails, so will the Sapienzas' claim for bad faith. Rather than ruling now on whether the Sapienzas can state a claim for bad faith, this Court, once the Supreme Court of South Dakota answers the certified question, may allow discovery on the merits of the claims but not on certain damages, such as financial net worth associated with the bad faith claim, after which Liberty Mutual may move for summary judgment.

**C. Damages**

This Court explained in its prior opinion that the Sapienzas had been unclear on whether they sought damages for the cost of building their home in addition to the cost of demolishing it, and that if the Sapienzas did seek building costs, then "that seems to be a novel issue of damages appropriate to address on certification." Doc. 16 at 15 n.2. The Sapienzas clarify in their amended complaint that they are seeking to recover "the cost of the demolition of [their] home as well as the costs associated with the construction and loss of use and enjoyment of the home that resulted from the court-ordered demolition." Doc. 19-1 at ¶ 58. This Court will not at this time rule on

whether the Sapienzas can recover for the cost of constructing their home. The Supreme Court of South Dakota accepted certification of the following question from this Court: Do the costs incurred by the Sapienzas to comply with the injunction constitute covered "damages" under the Policies such that Liberty Mutual must indemnify the Sapienzas for these costs? This certified question is related to the issue of whether the Sapienzas can recover for the cost of building their home. And the Supreme Court of South Dakota may very well address whether the Sapienzas can recover the building costs given footnote 2 of this Court's prior opinion. Either way, the Supreme Court of South Dakota's opinion on the certified question will assist this Court in ruling on the Sapienzas' request for damages. Liberty Mutual may file a motion for summary judgment on the damages issue once the Supreme Court of South Dakota issues its opinion.

IV. **Conclusion**

For the reasons stated above, it is hereby

ORDERED that the Sapienzas' motion to amend their complaint, Doc. 19, is granted. Once the Supreme Court of South Dakota issues its decision, this Court will lift the stay in this case for Defendant to answer the amended complaint and to allow a Rule 26(f) meeting and discovery.

DATED this 16th day of October, 2019.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE