UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| JOSEPH SAPIENZA, SARAH JONES SAPIENZAM.D., <br><br> Plaintiffs, <br><br> vs. <br><br> LIBERTY MUTUAL FIRE INSURANCE COMPANY, <br><br> Defendant. | 3:18-CV-03015-RAL <br><br><br> OPINION AND ORDER GRANTING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiffs, Joseph Sapienza and Dr. Sarah Jones Sapienza, built a house and then had to tear it down to comply with an injunction issued against them in a state court action. The Sapienzas' insurer, Liberty Mutual Fire Insurance Company (Liberty Mutual), defended them in the state court action but refused to indemnify them for the costs of complying with the injunction. The Supreme Court of South Dakota, answering a certified question from this Court, held that the costs the Sapienzas incurred to comply with the injunction constitute covered "damages" under the Liberty Mutual Policies. Sapienza v. Liberty Mut. Fire Ins. Co. (In re Matter of Certification of Question of Law), 960 N.W.2d 829, 830, 837 (S.D. 2021). Liberty Mutual has now moved for summary judgment on the Sapienzas' claim for breach of the duty to indemnify, arguing that the Policies cover the costs the Sapienzas incurred to demolish their home but nothing else. The Sapienzas disagree, claiming that the Policies also cover the value of their home or the cost of building their home, expenses they incurred to bring their home into compliance with regulations for historical

1

districts, and the costs of moving, storage, and temporary housing. This Court grants Liberty Mutual's motion on all costs except for the costs the Sapienzas incurred in trying to bring their home into compliance with the applicable regulations.

## I.    Facts

In 2013, the Sapienzas purchased a home in the McKennan Park Historic District in Sioux Falls, South Dakota. Doc. 27 at ¶¶ 6–7. They decided to raze the existing house and build a much larger new home on the property. Doc. 27 at ¶ 7. The Sioux Falls Board of Historic Preservation (Board) approved the Sapienzas' proposed design for their new home and the Sapienzas hired a contractor to build it. Doc. 27 at ¶¶ 8–10.

During construction, the Sapienzas' neighbors, Pierce and Barbara McDowell, became concerned about the new home's size and location. McDowell v. Sapienza, 906 N.W.2d 399, 403 (S.D. 2018); Doc. 27 at ¶ 11. The McDowells' lawyer sent the Sapienzas a cease-and-desist letter maintaining that the home violated height and setback regulations. McDowell, 906 N.W.2d at 403. The Sapienzas did not stop construction, so the McDowells sued them in state court for negligence and nuisance. Id.; Doc. 27 at ¶ 11; Doc. 27-1.

The McDowells' complaint alleged that the height and proximity of the Sapienzas' home prevented the McDowells from using their fireplace, blocked the natural light the McDowells previously enjoyed, and decreased the value of their home. Doc. 27 at ¶ 11; Doc. 27-1 at 4–5. The McDowells sought a permanent injunction requiring the Sapienzas to modify or relocate their house or, alternatively, damages. Doc. 27-1 at 5–8.

The Sapienzas retained a South Dakota attorney (defense counsel) to defend them and notified their insurer Liberty Mutual of the McDowell suit. Doc. 27 at ¶¶ 12, 19. Liberty Mutual

insured the Sapienzas under a Homeowner's Policy and an Excess Policy. Doc. 27 at ¶¶ 13–18;
Docs. 27-2, 27-3.

Several sections of these Policies are relevant to the Sapienzas' claims and Liberty
Mutual's motion for summary judgment. In brief, the Homeowner's Policy required Liberty
Mutual to indemnify the Sapienzas against a claim for damages because of "property damage" for
which the Sapienzas were held legally liable. Section II of the Homeowner's Policy describes the
personal liability coverage provided:

> **COVERAGE E – Personal Liability**
> If a claim is made or a suit is brought against an "insured" for damages because of
> "bodily injury" or "property damage" caused by an "occurrence" to which this
> coverage applies, we will:
> 1. Pay up to our limit of liability for the damages for which the "insured" is legally
>    liable. Damages include prejudgment interest awarded against the "insured"; and
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is
>    groundless, false or fraudulent. We may investigate and settle any claim or suit that
>    we decide is appropriate. Our duty to settle or defend ends when the amount we
>    pay for damages resulting from the "occurrence" equals our limit of liability.

Doc. 27-2 at 18. The Homeowner's Policy defines "property damage" as "physical injury to,
destruction of, or loss of use of tangible property." Doc. 27-2 at 8. The Homeowner's Policy in
its exclusions states that "**Coverage E – Personal Liability,** does not apply to: . . . b. 'Property
damage' to property owned by the 'insured.'" Doc. 27-2 at 20.

The Excess Liability Policy provides additional coverage to the Sapienzas:

> **COVERAGE – PERSONAL EXCESS LIABILITY**
>
> We will pay all sums in excess of the **retained limit** and up to our limit of liability
> for damages because of **personal injury** or **property damage** to which this policy
> applies and for which the **insured** is legally liable.

Doc. 27-3 at 7. The Excess Liability Policy defines "property damage" as "(a) injury to or
destruction of tangible property; (b) injury to intangible property sustained by an organization as
the result of false eviction, malicious prosecution, libel, slander or defamation." Doc. 27-3 at 7.

The Excess Liability Policy "does not apply to: **property damage** to: (1) property owned by any **insured.**" Doc. 27-3 at 8.

Liberty Mutual agreed to defend the Sapienzas from the McDowell suit under a reservation of rights, and defense counsel previously retained by the Sapienzas continued defending the Sapienzas with Liberty Mutual then paying the attorney's fees. Doc. 27 at ¶ 20; Doc. 27-5.

After a bench trial, a state judge granted the McDowells a mandatory injunction against the Sapienzas. The judge determined that the Sapienzas' house violated administrative regulations governing the height of new construction in historic districts, that the Sapienzas were liable to the McDowells under negligence and nuisance theories, and that the Sapienzas harmed the McDowells by rendering the McDowells' chimney unusable, "devast[ing]" the character of their residence, and decreasing their home's value. Doc. 27-4 at 14–21. Finding a monetary award inadequate to remedy these harms, the trial judge issued an injunction requiring the Sapienzas to bring their house into compliance with federal and state regulations for buildings in historic districts or rebuild it. Doc. 27-4 at 2–3, 25, 29.

Liberty Mutual sent the Sapienzas a letter in early March 2017 stating that it would "continue to provide a defense to you for the Lawsuit, including any appeal," but that the Policies did not cover the "injunctive relief" ordered by the state trial judge. Doc. 27-5 at 2. According to Liberty Mutual, the injunctive relief and the costs of complying with it did not constitute "damages" under the Policies. Doc. 27-5 at 4. Defense counsel continued to represent the Sapienzas during their appeal to the Supreme Court of South Dakota.

The Supreme Court of South Dakota affirmed the state trial court's order of injunctive relief in early 2018. McDowell, 906 N.W.2d 399. The court affirmed that regulations governing construction in historic districts applied to the Sapienzas' house and that the house violated these

4

regulations because it was more than eight feet taller than the permitted height. Id. at 405–06. As to the injunction, the Court held that "[p]ecuniary compensation would not provide adequate relief" for the harm the Sapienzas' house caused to the McDowells and the McKennan Park District. Id. at 407. The Court remanded the case "for further proceedings consistent with" its opinion. Id. at 411.

After the remand, the state judge ordered the Sapienzas to submit plans to the Board to bring their house into compliance with the regulations for historical districts and with the judge's original decision. Doc. 38-1. If the plans were not approved, the state judge would "exercise all remedies available consistent with" the judgment. Doc. 38-1 at 1. The Sapienzas hired 4D Design and Consulting to plan a remodel of their home that would bring it into compliance with the applicable regulations. Doc. 38-2. The Sapienzas claim that they submitted a new application to the Board based on the plans by 4D Design and Consulting, and that the application process cost them $25,959.94. Doc. 37 at 2–3; Doc. 27-7; Doc. 36-2 at 2, 15–16, 23–25. The Board refused to approve the new application and, according to the Sapienzas, prohibited them from submitting any future plans for approval. Doc. 27 at ¶ 47. In May 2018, the state judge issued a writ of execution ordering the sheriff to tear down the Sapienzas' home if they did not do so within thirty days. Doc. 38-3; Doc. 27 at ¶ 49. The Sapienzas complied with the writ and spent $61,025.88 to demolish their house.[1] Doc. 27 at ¶ 50; Doc. 36-2 at 2, 38.

The Sapienzas sued Liberty Mutual in this Court in September 2018. Among other claims, the Sapienzas alleged that Liberty Mutual breached the insurance contract by refusing to indemnify them for the costs they incurred to comply with the injunction. Doc. 1. This Court dismissed some

---

[1]The McDowells ultimately purchased the Sapienzas' lot and used the space to expand their own home.

of the claims under Federal Rule of Civil Procedure 12(b)(6) but refused to dismiss the Sapienzas'

claim that Liberty Mutual breached the duty to indemnify them. Rather, this Court concluded that

there were no controlling decisions from the Supreme Court of South Dakota on whether the costs

the Sapienzas incurred to comply with the injunction constituted "damages" under the Policies.

Doc. 16 at 14. This Court therefore certified a question to the Supreme Court of South Dakota:

"Do the costs incurred by the Sapienzas to comply with the injunction constitute covered

'damages' under the Policies such that Liberty Mutual must indemnify the Sapienzas for these

costs?" Doc. 16 at 14–15. This Court explained in a footnote that the Sapienzas had been unclear

on whether they sought damages for the cost of building their home in addition to the cost of

demolishing it, and that if the Sapienzas did seek building costs, then "that seems to be a novel

issue of damages appropriate to address on certification." Doc. 16 at 15 n.2.

The Supreme Court of South Dakota accepted the certified question and, in a 3–2 decision,

held that the Policies covered the costs the Sapienzas incurred to comply with the injunction.

Sapienza, 960 N.W.2d at 830, 837. As that Court explained, the "injunction costs" were based on

the Sapienzas' *legal liability* for what would otherwise be assessed as money damages had" the

trial judge decided that a monetary payment would have adequately remedied the harm to the

McDowells' property. Id. at 837. Although Liberty Mutual argued that the Policies only covered

money the Sapienzas were ordered to pay third parties, the Court interpreted the term "damages"

in the Policies as meaning "compensation *or satisfaction imposed by law* for a wrong or injury

caused by a violation of a legal right." Id. at 835 (citation omitted). Under this definition, the

Court explained, the costs the Sapienzas incurred to comply with the injunction were covered

"damages;" the "Sapienzas paid these costs to 'satisfy the wrong or injury' they caused to the

McDowells' property," and the Sapienzas were, in fact, held legally liable for this injury. Id. at

837. Put a bit differently, "the measure of 'damages' for which the Sapienzas became legally liable because of . . . property damage was the cost the Sapienzas incurred in complying with the injunction." Id. at 839.

But the decision was not all good news for the Sapienzas. In a footnote, the Court found it "clear that the policy provisions at issue" would not cover the costs the Sapienzas incurred to construct their home. Id. at 839 n.10. This was so because the "Sapienzas were not held legally liable for the *construction* costs of their home, nor were these costs incurred *because of property damage* caused to a third party." Id.

The Sapienzas have since filed an amended complaint in this Court. Doc. 27. Count 2, the Sapienzas' claim that Liberty Mutual breached the insurance contract by failing to indemnify them, clarifies that the Sapienzas are seeking the cost of demolishing their home "as well as the costs associated with the construction and loss of use and enjoyment of the home that resulted from the court-ordered demolition of the home."[2] Doc. 27 at ¶ 62. Count 2 also seeks attorney's fees under SDCL § 58-12-3, alleging that Liberty Mutual's refusal to indemnify them was vexatious and without reasonable cause. Doc. 27 at ¶ 61. This Court directed the parties to work together to calculate, if they could agree, the amount Liberty Mutual owed the Sapienzas under Count 2 given the Supreme Court of South Dakota's decision on the certified question. Doc. 26.

The parties could not agree on the amount Liberty Mutual owes under Count 2. The Sapienzas demanded over a million dollars, asking Liberty Mutual to indemnify them for the costs of submitting a new application to the Board, the costs of removing and storing the belongings from their home, the costs of demolishing their home, the "loss of use of value of the home," and

_____

[2]The Sapienzas' amended complaint also alleges that Liberty Mutual breached the duty to defend them (Count 1) and engaged in bad faith by mishandling their defense (Count 3). Doc. 27.

their temporary housing costs. Doc. 36-2 at 2; see also Doc. 37 at 3–4. Liberty Mutual paid the Sapienzas' demolition costs plus interest but refused to pay anything else. Docs. 36-3; 36-4; 36-5; 36-6.

Liberty Mutual has now moved for summary judgment on Count 2, arguing that it paid the full amount owed to the Sapienzas for indemnity coverage and that the Sapienzas cannot recover attorney's fees under Count 2. Docs. 34, 35. The Sapienzas oppose the motion, arguing that Liberty Mutual must pay "any and all" injunction costs and that material questions of fact make summary judgment inappropriate. Doc. 37.

## II.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) places the burden initially on the moving party to establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Once the moving party has met that burden, the nonmoving party must establish that a material fact is genuinely disputed either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A), (B); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012); see also Mosley v. City of Northwoods, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials). A party opposing a properly supported motion for summary judgment "may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor, without resort to speculation, conjecture, or fantasy." Reed v.

8

City of St. Charles, 561 F.3d 788, 790–91 (8th Cir. 2009) (cleaned up and citations omitted).  In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

### III.   Analysis

#### A.  Loss of use of the home and costs of construction, moving, storage, and temporary housing

Courts in South Dakota use the language of the insurance policy to determine the scope of coverage.  Quinn v. Famers Ins. Exch., 844 N.W.2d 619, 623 (S.D. 2014); Swenson v. Auto Owners Ins. Co., 831 N.W.2d 402, 407 (S.D. 2013).  Here, the Homeowner's Policy provided in relevant part that "[i]f a claim is made or a suit is brought against an 'insured' for damages because of . . . 'property damage'" Liberty Mutual would "[p]ay up to our limit of liability for the damages for which the 'insured' is legally liable."  Doc. 27-2 at 18.  The Excess Liability Policy similarly provided coverage for "damages because of . . . **property damage** to which this policy applies and for which the **insured** is legally liable."  Doc. 27-3 at 7.  Both Policies excluded coverage for property damage to property owned by the insured.  Doc. 27-2 at 20; Doc. 27-3 at 8.  The Supreme Court of South Dakota determined that these Policy provisions did not cover the money the Sapienzas spent to build their home; the Sapienzas were not held legally liable for the construction costs, and they did not incur these costs because of property damage to a third party.  Sapienza, 960 N.W.2d at 839 n.10.

For similar reasons, the Policies do not cover the loss of the use and enjoyment of the Sapienzas' home or the costs of moving, storage, or temporary housing.  First, the Sapienzas were held legally liable for the property damage they caused to the McDowells, not for the use and

enjoyment of their own home or the costs of moving, storing their belongings, or temporary housing. Second, these costs and the loss of the use and enjoyment of the Sapienzas' house do not constitute "damages" as the Supreme Court of South Dakota interpreted that term. Again, the court defined "damages" as "satisfaction imposed by law for a wrong or injury caused by a violation of a legal right." Id. at 837 (citation omitted). Here, the "satisfaction imposed by law" was that the Sapienzas either had to bring their house into compliance with the regulations or rebuild it. The Sapienzas ultimately demolished their home, and the cost of doing so constituted "damages" because they paid these costs to satisfy the injury to the McDowells. Id. Conversely, neither the value of the Sapienzas' home nor the costs of moving, storage, or temporary housing was a form of satisfaction imposed by law. Indeed, the Sapienzas could not have satisfied the injury to the McDowells by paying the value of their newly constructed home or moving out and storing their belongings elsewhere. In short, the value of the Sapienzas' home and the cost of moving, storage, and temporary housing are not "damages" for which the Sapienzas were held legally liable.

The Sapienzas disagree. They contend, first, that the Supreme Court of South Dakota found that the issue of whether they could recover the costs of constructing their home was not properly before the Court because it was not included in the certified question. Doc. 37. The Sapienzas' argument is mistaken. The Supreme Court of South Dakota explained that the Sapienzas made clear at oral argument that they were seeking construction costs and noted this Court's comment that, if the Sapienzas were seeking those costs, it would be appropriate to address that on certification. Sapienza, 960 N.W.2d at 839 n.10. The Court then said that "[w]hile [the construction costs] issue was not ultimately incorporated in the certified question, it is clear that the policy provisions at issue would not cover such costs." Id. This is a conclusive answer that

the Sapienzas cannot recover their construction costs. And this Court cannot ignore that answer even if it is dicta as the Sapienzas argue. See Jurrens v. Hartford Life Ins. Co., 190 F.3d 919, 922 (8th Cir. 1999) (explaining that a federal court sitting in diversity jurisdiction may rely on "relevant state precedent, analogous decisions, considered dicta, and any other reliable data" when attempting to predict how a state's highest court would decide an issue (cleaned up and citation omitted)).

The Sapienzas next argue that the Supreme Court of South Dakota held that their "injunction costs" were covered but left open the question of what items may fall within this category. Doc. 37 at 8. In the Sapienzas' view, the issue for this Court is to determine whether the costs they seek in Count 2 constitute "injunction costs." Doc. 37 at 8. The Sapienzas contend that Liberty Mutual must pay for "any and all" injunction costs and that their injunction costs "include all economic harms" they suffered because of the injunction. Doc. 37 at 1, 8, 14. But the Supreme Court of South Dakota did not hold that the Policies cover all "injunction costs" or all economic harm the Sapienzas suffered because of the injunction. Nor did the Court hold that the standard for determining coverage was whether an expenditure constituted an "injunction cost." Rather, the Court focused on the language of the Policies, analyzing whether the costs the Sapienzas incurred to comply with the injunction constituted "damages" because of property damage for which the Sapienzas were held legally liable. Sapienza, 960 N.W.2d at 833–39. It was this language—not whether an expenditure constitutes an "injunction cost"—that the Court relied on to conclude that the Sapienzas could not recover their construction costs. Id. at 839 n.10. In the end, the terms of the Policies govern Liberty Mutual's obligation to indemnify the Sapienzas. This Court cannot replace those terms with a standard that the Supreme Court of South Dakota never adopted. See Culhane v. W. Nat'l Mut. Ins. Co., 704 N.W.2d 287, 296 (S.D. 2005)

11

(explaining that the insurance contract's terms controlled the indemnity question rather than the plaintiff's argument about what should rationally be covered).

The Sapienzas also argue that summary judgment should not enter because fact questions exist as to what may be considered "injunction costs" and the amount of these costs. As just explained, though, whether an expenditure constitutes an "injunction cost" is not the standard for determining coverage. The Sapienzas also failed to specify what these fact questions are and to explain how these questions are material to determining whether coverage exists under the Policies' terms. Liberty Mutual's duty to indemnify the Sapienzas is contractual, Culhane, 704 N.W.2d at 296–97, and the interpretation of an insurance contract is a question of law, Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co., 822 N.W.2d 724, 726 (S.D. 2012). There are times, of course, when a trial is necessary because of material questions of fact. See, e.g., St. Paul Fire & Marine Ins. Co. v. Engelmann, 639 N.W.2d 192, 198–99 (S.D. 2002); Ex. rel. Estate of Trobaugh v. Farmers Ins. Exch., 623 N.W.2d 497, 503 (S.D. 2001). But when the material facts are undisputed, indemnity disputes present a question for the court. Union Ins. Co. v. Scholz, 473 F. Supp. 3d 978, 984–88 (D.S.D. 2020); Owners Ins. Co. v. Tibke Const., Inc., 901 N.W.2d 80, 89 (S.D. 2017) (finding that the circuit court erred by denying summary judgment in an insurance coverage dispute where the questions of fact identified by the circuit court were not relevant to the existence of coverage); Culhane, 704 N.W.2d at 289 n.2. The Sapienzas have not identified any material questions of fact on Count 2 and the question of whether the Policies cover the damages sought in Count 2 is a legal one.

The Sapienzas relatedly argue that summary judgment would be premature because discovery is still open. Summary judgment can enter before discovery has ended so long as the nonmovant has received adequate time for discovery. Robinson v. Terex Corp., 439 F.3d 465, 467

12

(8th Cir. 2006). A party claiming insufficient time for discovery must make some showing that discovery has been inadequate. Id.; Pony Comput. Inc. v. Equus Comput. Sys. of Mo., Inc., 162 F.3d 991, 996 (8th Cir. 1998). The Sapienzas have not made that showing here on Count 2. They never filed an affidavit or declaration under Rule 56(d) of the Federal Rules of Civil Procedure, and have neither explained how more information about the nature and extent of their "injunction costs" is relevant to what the terms of the Policies cover nor why Liberty Mutual would have information on "injunction costs" that the Sapienzas do not already possess themselves. Liberty Mutual is entitled to summary judgment on the Sapienzas' claims in Count 2 for loss of use of the home and the costs of construction, moving, storage, and temporary housing.

### B. Costs of submitting new application to the Board

Whether the Policies cover the costs the Sapienzas incurred to submit a new application to the Board presents a very close question. Again, the Sapienzas were held legally liable for the property damage they caused to the McDowells' home. The remedy, or "satisfaction imposed by law" for this injury was that the Sapienzas had to either bring their home into compliance with the regulations or rebuild it. After remand from the Supreme Court of South Dakota, the trial judge ordered the Sapienzas to submit a new application to the Board that would bring their house into compliance with the regulations for historic districts and the judge's original opinion. Doc. 38-1. The Sapienzas claim that they spent $25,959.94 in permit fees and payments to a design firm to submit a new application to the Board and to bring their home into compliance. If that is so,[3] the Policies may cover these costs because the Sapienzas paid them seeking to satisfy the injury to the

---

[3] The Sapienzas submitted an invoice, fee estimate, and what appears to be an unsigned contract from 4D Design and Contracting. Doc. 38-2; Doc. 36-2 at 16, 23. The record is insufficient for this Court to determine as a matter of law if the $25,959.94 figure is accurate, and the Sapienzas have not sought summary judgment on this claim.

13

McDowells' property, and trying to bring the home into compliance with the regulations was a form of satisfaction imposed by law.

Liberty Mutual contends otherwise. It argues first that "the only cost the Sapienzas were ordered to pay to satisfy their liability to the McDowells is the cost to remove their house, which was incurred in response to the Writ of Execution." Doc. 39 at 7. In Liberty Mutual's view, the trial judge never ordered the Sapienzas to submit an application to the Board but rather merely gave them the opportunity to do so. Doc. 39 at 3, 7. The Supreme Court of South Dakota interpreted the trial judge's order differently, however, saying that the judge "ordered the Sapienzas to submit an application to the [Board] to cure and remedy the violations of the historic district regulations in accord with the court's original decision." Sapienza, 960 N.W.2d at 832. Later, when explaining why the Policies covered the costs the Sapienzas incurred to comply with the injunction, the Court stated that the trial judge "deemed it necessary to remedy the harm [to the McDowells] . . . by first ordering the Sapienzas to expend funds to bring their home into compliance with the governing regulations, and when that was not accomplished," by issuing "a writ of execution ordering the Sapienzas to remove it altogether." Id. at 837. The order reasonably can be read as requiring the Sapienzas to submit a new application to the Board. Indeed, that is how the trial judge apparently read it; in the writ of execution, he wrote that the Sapienzas had "been ordered to submit an application to the [Board] to cure and remedy the violations found with regard to their home." Doc. 38-3. Liberty Mutual is incorrect that the writ of execution was the only time the trial judge ordered the Sapienzas to do something; the trial judge's injunction ordered the Sapienzas to bring their house into compliance with the regulations or rebuild it, and the writ of execution was simply a means of carrying out that order after the Sapienzas failed to secure approval from the Board.

Liberty Mutual also argues that the costs the Sapienzas incurred to submit a new application to the Board do not constitute "damages" because these costs did not remedy the harm to the McDowells' house. Doc. 39 at 8. But neither the Policies nor the Supreme Court of South Dakota's decision establish that the term "damages" only covers costs that ultimately restored the McDowells' house to its original state. Instead, according to the majority decision, "damages" means "satisfaction imposed by law for a wrong or injury caused by a violation of a legal right." Sapienza, 960 N.W.2d at 837 (citation omitted). The Supreme Court of South Dakota defined "satisfaction," as "the giving of something with the intention that it is to extinguish some existing legal or moral obligation." Id. at 835 n.4 (cleaned up and citation omitted). The costs of the new application constitute damages because the Sapienzas paid these costs intending to bring their home into compliance with the regulations to comply with the trial court's order and thereby remedy the harm to the McDowells' property. The Board's decision to deny the Sapienzas' application does not change this fact.

Liberty Mutual further contends that the Sapienzas did not incur the costs of the new application because of property damage to the McDowells' home. Doc. 35 at 15. That is not correct, though. As the Supreme Court of South Dakota explained, the trial judge "deemed it necessary to remedy the" damage to the McDowells' property by ordering "the Sapienzas to expend funds to bring their home into compliance with the governing regulations." Sapienza, 960 N.W.2d at 837. The costs of the new application are damages "because of property damage."

### C. Attorney's fees under SDCL § 58-12-3

Section 58-12-3 allows an insured to recover attorney's fees if the insurer "refused to pay the full amount of [the] loss," and the refusal was "vexatious or without reasonable cause." Liberty Mutual did not act vexatiously or unreasonably by refusing to indemnify the Sapienzas for all the

losses they claimed. "An insurance company is not guilty of vexatious or unreasonable conduct by asserting and relying on its legitimate coverage defenses." First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins. Co., 2 F.3d 801, 811–12 (8th Cir. 1993) (applying South Dakota law). In American Family Mutual Ins. Co. v. Merrill, 454 N.W.2d 555 (S.D. 1990), for instance, the Supreme Court of South Dakota upheld the trial judge's decision that the insurer did not act vexatiously or unreasonably where the issue the insurer relied on to deny coverage was "open to interpretation" and there were no South Dakota cases settling the issue. Id. at 560. The same situation exists with the Sapienzas' Policies and claims.

There were no controlling South Dakota cases on whether the costs the Sapienzas incurred to comply with the injunction constituted "damages," and cases from other jurisdictions supported Liberty Mutual's decision to deny coverage. Doc. 16 at 18–19. This Court was uncomfortable predicting how the Supreme Court of South Dakota would rule on the issue and thus certified the issue. Doc. 16. The Supreme Court of South Dakota split 3 to 2 in its ruling allowing certain costs claimed by the Sapienzas as "damages" but disallowing others. Sapienza, 960 N.W.2d 829. The two dissenting judges favored ruling for Liberty Mutual's policy interpretation. Id. at 839–43. Although this Court is denying summary judgment on whether the Policies cover the costs of the new application, that issue is, as this Court stated above, "a very close question." A finding for the insured "does not automatically brand the insurer's actions unreasonable and vexatious." All Nation Ins. v. Brown, 363 N.W.2d 216, 218 (S.D. 1985). Liberty Mutual had a legitimate, good-faith argument that the Policies do not cover the costs claimed by the Sapienzas including the cost of the new application, and it did not act vexatiously or unreasonably by insisting that this Court decide the issue. See Hot Stuff Foods, LLC v. Houston Cas. Co., 771 F.3d 1071, 1081 (8th Cir. 2014) ("Where there are open questions of fact or law determinative of the insured's liability, the

16

insurer, acting in good faith, may insist on judicial determination of such questions without subjecting itself to penalties for vexatious refusal to pay." (quoting Howie v. Pennington Cnty., 563 N.W.2d 116, 119 (S.D. 1997))). Liberty Mutual is entitled to judgment as a matter of law on the Sapienzas' claim for attorney's fees under Count 2.

## IV.   Conclusion

For the reasons stated above, it is

ORDERED that Liberty Mutual's Motion for Partial Summary Judgment, Doc. 34, is granted in part. Liberty Mutual is entitled to summary judgment on all of the claims in Count 2 of the Sapienzas' Amended Complaint except for the costs of demolishing the Sapienzas' home (which have already been paid) and submitting a new application to the Board.

DATED this _18ᵗʰ_ day of March, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE